IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 12, 2008

Charles R. Fulbruge III
Clerk

No. 07-10287

TONI DRAMSE

Plaintiff - Appellee

v.

DELTA FAMILY-CARE DISABILITY AND SURVIVORSHIP PLAN

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas, Dallas
No. 3:05-CV-524

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Delta Family-Care Disability and Survivorship Plan appeals the district court's judgment awarding plaintiff-appellee Toni Dramse long-term disability benefits, attorneys' fees, costs, and interest. Delta Family-Care Disability and Survivorship Plan argues that the district court impermissibly imposed a per se duty to investigate Dramse's claims and substituted its own judgment for the reasonable judgment of the plan administrator. Because we find that the plan administrator's decision was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

supported by substantial evidence, we VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.

I.

Toni Dramse was employed by Delta Air Lines, Inc. ("Delta") for over sixteen years, starting as a luggage handler on May 17, 1984, and later working as a reservations agent until she was terminated on November 16, 2000. Dramse's work as a reservation agent was sedentary in nature, it required no lifting, standing, bending, or stooping. The Delta Family-Care Disability and Survivorship Plan (the "Plan") is an employee welfare benefits plan established and maintained under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan provides both short-term and long-term disability benefits to non-pilot Delta employees.

Delta does not pay any of the monies awarded under the benefits plan directly. Instead, Delta periodically contributes money into a trust fund (the "Benefits Trust"), and the Benefits Trust then pays out disability benefits. Delta's contributions to the Benefits Trust cannot revert back to Delta under any circumstances. The Administrative Committee of Delta (the "Committee") is the plan administrator and named fiduciary for purposes of the Plan's operation and administration. The Committee is granted exclusive authority to interpret and construe the benefits plan and to decide all questions of eligibility. The Committee delegates the initial determination of disability to Aetna Life Insurance Company ("Aetna"). If Aetna determines that disability benefits should be denied (or discontinued), an employee can appeal that decision to Aetna and, if denied, then to the Committee.

Generally, short-term disability benefits are available under the benefits plan for up to twenty-six weeks if the participant is unable to perform her customary job. If a claimant exhausts her short-term disability benefits, she may apply for long-term disability benefits. Section 4.03 of the benefits plan

states that an "employee shall be eligible for Long-Term Disability provided [s]he is disabled at that time as a result of demonstrable injury or disease (including mental or nervous disorders) which will continuously and totally prevent [her] from engaging in any occupation whatsoever for compensation or profit, including part-time work." A claimant must be totally and continuously disabled on the date that her short-term disability benefits expired.

On August 9, 2000, Dramse contacted Aetna alleging that she was suffering from an on-the-job injury that originally occurred in 1997 and was exacerbated in late 1999, when she fell backwards from her chair and hit her head. Dramse's medical records reveal that around this time she was suffering from multiple physical and mental ailments, including fibromyalgia, cervical facet syndrome, chronic lower back pain, obesity, alcoholism, and symptoms of bipolar disorder and depression. Dr. Michael Gray, Dramse's chiropractor, opined in a letter to the Texas Workers' Compensation Commission that Dramse was unable to work, although she would be able to return to work on August 21, 2000. Aetna, therefore, certified Dramse for short-term disability benefits through August 20, 2000.

Dramse did not return to work on August 21, 2000, as planned, but used sick time and vacation days to delay her return. She did attempt to work on August 29, September 4, September 29, and October 13, 2000, but was unable to work a full shift on any of those days. Ultimately, Dramse was terminated on November 16, 2000. She had neither exhausted her short-term disability benefits nor filed for long-term disability benefits. Nevertheless, Dramse filed suit against Delta, and as consideration for settlement of that lawsuit, she was permitted to file a claim for long-term disability benefits.[1]

---

[1] There is little evidence in the record concerning the claims or scope of Dramse's lawsuit against Delta or the terms of the settlement. In Aetna's Event Profile Report, created when Dramse initially filed for long-term disability benefits, it is simply noted that Dramse "has attorneys involved and that she is settling and they are offering her LTD benefits if it is

In May 2003, Dramse filed a claim with Aetna seeking short-term and long-term disability benefits based on both alleged physical and mental ailments. On May 7, 2003, Aetna denied Dramse any benefits after August 20, 2000, but gave her sixty days to appeal the denial. Dramse appealed the decision and submitted additional medical records. On August 27, 2003, Aetna reversed its decision in part, granting Dramse short-term disability benefits for the period from May 10 through November 7, 2000. On the other hand, Aetna denied Dramse's claim for long-term disability benefits because it concluded that Dramse was not totally and continuously disabled as of November 8, 2000. Although there was sufficient evidence to prove that Dramse could not perform her customary job, Aetna determined there was insufficient evidence to conclude that she could not perform any occupation, including part-time work. On February 17, 2004, Dramse appealed the denial of long-term disability benefits to Aetna. Aetna denied her appeal on May 5, 2004, but then reopened the case for further consideration. On November 2, 2004, Aetna again denied the claim.

While Aetna's reconsideration was still pending, on August 26, 2004, Dramse appealed Aetna's decision to the Committee. In support of her claim, she submitted her medical records, including contemporaneous medical notes and reports, and some retrospective opinions from health care providers. Although Dramse was previously awarded social security disability benefits on October 14, 2000, due to "affective/mood disorders," she did not submit the medical records or findings underlying that award. The most relevant medical records were the notes and letters of Dr. Gray, Mary Orndorff, a licensed master social worker, and Dr. Martin Fisher.[2]

approved . . . ." According to the Plan's briefs, the Plan was not itself a party to the lawsuit.

[2] Dramse also submitted medical reports from Drs. Sharp, Holm, and Fulbright, but these reports were made well after November 8, 2000, and they did not purport to discuss Dramse's medical condition on or around November 8, 2000. The Committee and the district court disregarded these records. Dramse does not rely on them on appeal.

Dr. Gray's medical notes revealed that Dramse began seeing Dr. Gray sometime in 1997 for a series of injuries, the most serious occurring when she struck her head in 1999. Dr. Gray repeatedly stated in his notes that Dramse suffered from fibromyalgia and other physical injuries that periodically limited her ability to work. Yet he was also of the opinion throughout 2000 that Dramse was recovering and he often encouraged her to return to work. For example, on March 13, 2000, Dr. Gray stated that Dramse was "75%-85% recovered from her injury[,]" and, on August 28, 2000, he noted that Dramse had made a "smooth return to full [work] duty and [he was] encouraged she [would] be able to handle decreasing frequency of visits [to him]." Dr. Gray also remarked that Dramse's emotional health was recovering and, on one occasion, he noted that Dramse should return to work to help improve her mental health. None of his notes indicated that Dramse should be restricted from working in or around November of 2000.

Dr. Gray's contemporaneous letters were similar to his notes. In an August 21, 2000, report to the Texas Workers' Compensation Commission, Dr. Gray stated that no further restrictions on Dramse's ability to work were required. On October 17, 2000, Dr. Gray provided a note to Delta to explain Dramse's repeated absences from work, wherein he stated:

> I just wanted to inform you of the circumstances surrounding [Dramse's] absences. She has missed work because of multiple job-related injuries. She was probably returned to work too soon in an effort to protect her job. There were several episodes where she had a major flare up of pain and had to take off in order to recover. She has also been diagnosed with [f]ibromyalgia, which has caused her a lot of pain. She has always been concerned with her job and her absences. At this point in time she continues to recover from her injuries and the fibromyalgia. She is stabilized and will probably not need to miss any more work.

Nevertheless, Dr. Gray revised his opinion in 2003. In support of Dramse's claim for long-term disability benefits, he submitted a letter to Aetna summarizing her past injuries and opined that Dramse should not have returned to work in August of 2000. He concluded that:

> It is my opinion that she was unable to return to work . . . and that she should have been placed on Long-Term Disability until she could fully recover from her injuries or achieve a level of health that would enable her to return to work. In retrospect I believe she should have been on long term disability as long ago as 1999. I do feel her prognosis was and remains guarded primarily due to the underlying fibromyalgia that magnifies even the most minor injury.

Meanwhile, the contemporaneous mental health information provided by Ms. Orndorff, Dramse's pyschotherapist, and Dr. Fisher, Dramse's psychiatrist, was ambiguous. In a November 29, 2000, letter, Ms. Orndorff wrote that Dramse suffered from "grief, loss and depression, due to chronic pain that originated with an on the job injury." Without further elaboration, she stated that "[s]ome of my clients have attained full disability whose symptoms are not as severe as [Dramse's.]" Yet Ms. Orndorff concluded that it was her "hope that [Dramse] is reinstated as a Delta employee or offered disability." (Emphasis added). Furthermore, Dr. Fisher's notes, which spanned from August 9, 1999, through January 1, 2002, did not address whether Dramse was disabled. His notes tracked Dramse's mood, which was often depressed, her substance abuse, and her fluctuations in weight, but not once did Dr. Fisher mention that Dramse's mental health precluded her from working or engaging in any daily activities.

On the other hand, as with the physical evidence, the retrospective accounts of Dramse's mental health unambiguously supported her claim for disability. On April 15, 2003, Dr. Fisher submitted a letter to Aetna explaining that:

> [Dramse] had been followed by me routinely in the summer and fall of 2000. She remains significantly depressed with severe . . . hopelessness, worthlessness, and guilt. She did sustain a suspension from work in 11/2000 and then was subsequently terminated. . . . She remained very significantly depressed, including exhibiting bipolar depression, as well. She was not able to concentrate. She could not fulfill her work-related duties. She was essentially psychiatrically disabled during that period of time for most of the year of 2000.

Similarly, in an undated letter submitted in support of Dramse's claim, Ms. Orndorff stated that in 2000 Dramse "was extremely depressed."

Based on the procedures of the Plan, the Committee was initially scheduled to consider Dramse's appeal during its February 8, 2005, meeting. Yet after that meeting, the Committee advised Dramse that it would postpone its decision until the Committee's May 5, 2005, meeting in order to obtain additional information. The Committee stated that it was unable to reconcile Dramse's past medical records with the doctors' retrospective opinions. Accordingly, the Committee requested that Dramse attend an independent psychiatric examination pursuant to § 4.05 of the benefits plan, which states:

> The Committee or its designees may request a medical examination of the Employee by a physician or physicians appointed on behalf of the Committee before determining disability and during the disability period to determine if the Employee remains disabled. Failure to cooperate with requests for medical examination made on behalf of the Committee shall be grounds for denying disability benefits hereunder.

By letter dated March 1, 2005, however, Dramse refused to attend the independent medical examination, claiming that the request was untimely.[3]

---

[3] Below, Dramse argued that she did not refuse to attend an independent medical examination. Instead, Dramse asserted, she merely "attempted to enter a dialog with [the Committee] to determine what reasoning would suggest that an IME physician, four years later, would be in a better position to opine regarding [Dramse's] disability on November 8,

7

On March 15, 2005, Dramse filed the current lawsuit. Dramse sought: (1) a declaration that she was not obligated to attend the independent medical examination because it was not timely requested; (2) a declaration that the Plan did not render a timely decision of her claim; (3) a declaration that she was entitled to long-term disability benefits; (4) an award of prejudgment interest on past due benefits; and (5) attorneys' fees and costs. On April 20, 2005, the Plan filed a motion to dismiss, arguing that Dramse's claims were premature because she failed to exhaust her administrative remedies under the Plan and ERISA. As such, it asserted, Dramse was required to wait for the Committee to make a final determination regarding benefits before filing suit.

Before the district court ruled on the motion to dismiss, on May 10, 2005, the Committee upheld the denial of Dramse's long-term disability benefits. The Committee's decision was set forth on May 16, 2005, in a forty-four page letter (the "Denial Letter") itemizing the medical evidence submitted and setting forth the rationale behind its decision. The Committee stated that the question before it was whether the record showed that, as of November 8, 2000, the date her short-term disability benefits expired, Dramse was disabled as a result of a demonstrable injury or disease, including mental or nervous disorders, which would continuously and totally prevent her from engaging in any occupation, including part-time work. Based mostly on its interpretation of the information submitted by Dr. Gray, Ms Orndorff, and Dr. Fisher, the Committee determined that Dramse did not demonstrate that she was entitled to long-term disability benefits. The Committee gave more weight to its interpretation of the health care providers' relatively contemporaneous notes and reports than to their retrospective reports. Although the Committee agreed that Dramse was totally

---

2000, than her two mental health care practitioners." This court does not need to resolve this dispute because the characterization of Dramse's position is immaterial.

and continuously disabled as of May 16, 2005, it concluded that she was not disabled as of November 8, 2000.

First, the Committee found insufficient evidence of physical disability. It relied on the fact that Dr. Gray medically released Dramse to return to work on August 21, 2000, without any restrictions, and his opinion on October 17, 2000, that Dramse was "stabilized and [would] probably not need to miss any more work." The Committee also pointed out that while Dr. Gray excused Dramse from work eight times between May and August 2000, he did not excuse her from work once after September 2000. While Dr. Gray opined three years later that Dramse "should have been placed on [l]ong-[t]erm [d]isability until she could fully recover[,]" the Committee was uncertain whether Dr. Gray thought Dramse was unable to perform any occupation whatsoever. Regardless, the Committee gave Dr. Gray's March 23, 2003, letter less weight because it was written years after the fact and contradicted his contemporaneous notes.

Second, the Committee determined that there was insufficient evidence of mental disability. The Committee interpreted Ms. Orndorff's November 29, 2000, letter expressing the "hope" that Dramse would be reinstated as a Delta employee as a medical determination that Dramse was capable of working. Furthermore, the Committee noted that Dr. Fisher's medical notes did not indicate that Dramse was totally disabled, nor did Dr. Fisher restrict her life or work activities in any manner. By contrast, the Committee found Dr. Fisher's April 3, 2003, opinion that Dramse was "essentially psychiatrically disabled during . . . most of the year of 2000" less than probative because it was unsupported by his contemporaneous notes. Finally, the Committee gave no weight to Dramse's entitlement to social security disability because a claimant need not show an inability to engage in any occupation whatsoever in order to qualify for benefits.

9

In light of the Committee's decision, on June 2, 2005, the district court denied the Plan's motion to dismiss for failure to exhaust administrative remedies. On July 1, 2005, the district court ordered the parties to meet to consider the nature of the case and the possibility of a joint resolution. In response, on August 11, 2005, the parties filed a joint report that narrowed the issues. Dramse agreed that she would not argue that she should be awarded total disability benefits because the Plan reviewed her claim in an untimely manner. In return, the Plan agreed that it would not argue that Dramse waived her right to seek benefits by refusing to attend the independent medical examination. Finally, the parties agreed to restrict the record to the evidence presented to the Committee before the Denial Letter was issued on May 16, 2005.

On February 16, 2006, the parties filed cross motions for summary judgment. Dramse argued that the she was entitled to long-term disability benefits because the Committee: (1) abused its discretion when interpreting the benefits plan to require that a claimant be unable to perform any occupation whatsoever, including part-time work; (2) failed to meet an extra-ERISA contractual duty to investigate Dramse's claim; (3) failed to produce a complete copy of the administrative record; (4) failed to consult with medical and healthcare practitioners; (5) failed to obtain a vocational analysis to evaluate Dramse's ability to work; and (6) failed to support the denial of benefits with substantial evidence. The Plan, on the other hand, argued that the Committee's decision should be affirmed because Dramse bore the burden of proving that she was entitled to long-term disability benefits, and she failed to produce sufficient evidence to support her claim. Moreover, the Plan asserted that the contemporaneous medical records constituted substantial evidence in support of its determination that Dramse was not totally and continuously disabled as of November 8, 2000.

On August 16, 2006, the district court granted Dramse's motion for summary judgment and denied the Plan's cross-motion for summary judgment. As a preliminary matter, the district court held that the Committee's construction of the benefit plan was legally correct. For Dramse to be eligible for long-term disability benefits, it found, she must "(1) [have] been totally and continuously prevented from engaging in any occupation whatsoever for compensation or profit, including part-time work, (2) upon expiration of [her] short term disability period—November 8, 2000." The district court stated that it could only uphold the Committee's determination if there was substantial evidence in the record that Dramse was able to work as of November 8, 2000, "regardless of whether [Dramse] has supported her entitlement to benefits with record evidence."

The district court found that there was some record evidence supporting the Committee's determination that Dramse was physically able to work as of November 8, 2000. However, the district court held that the Plan abused its discretion because there was no evidence that Dramse was psychologically able to work as of November 8, 2000.[4] First, the district court stated, Dr. Gray's medical reports were not probative because he was Dramse's chiropractor. He was not an expert of mental health. Second, the district court found that Dr. Fisher's medical reports did not support the Committee's conclusion because he specifically opined in his April 15, 2003, letter that Dramse was "essentially psychiatrically disabled." It was irrelevant to the district court that Dr. Fisher failed to note in his contemporaneous records that Dramse was unable to work because there was nothing to suggest that Dr. Fisher's usual practice was to record such information. Third, the district court held that Ms. Orndorff's

---

[4] Because the district court found that the Committee's decision was not supported by substantial evidence, the district court did not consider Dramse's alternative arguments. Dramse has not sought to rely on them on appeal.

November 29, 2000, statement—that she hoped Dramse would be reinstated as a Delta employee or offered disability benefits—was unclear and not probative. The district court reasoned that the statement did not reveal whether Ms. Orndorff believed that Dramse was able to work at that time, hoped that she would be reinstated when her condition improved, or something else altogether. In short, the district court held that the Committee's decision was not supported by substantial evidence.

In its order granting Dramse summary judgment, the district court ordered the parties to file briefs concerning the remedies issue. The parties stipulated that Dramse should receive $1,137.79 per month if she were entitled to long-term disability benefits. Accordingly, on January 30, 2007, the district court awarded Dramse $31,165.43 in past due long-term disability benefits and pre-judgment interest for the period of November 8, 2000, to August 27, 2002. On February 21, 2007, the district court entered a final judgment awarding Dramse $65,000 in attorneys' fees.

On February 28, 2007, the Plan filed a timely notice of appeal. The Plan challenges the district court's eligibility ruling on two fronts. First, the Plan argues that the district court improperly imposed a per se duty upon the Committee to investigate Dramse's claim regardless of whether Dramse made an initial demonstration of entitlement to benefits. Relatedly, the Plan asserts that this alleged duty to investigate improperly shifted the burden of proof from Dramse to the Committee. Second, the Plan argues that although there was substantial evidence in the record supporting its conclusion that Dramse was able to work as of November 8, 2000, the district court substituted its own reasonable judgment for the reasonable judgment of the Committee. It asserts that the district court failed to afford the plan administrator proper deference by reinterpreting and re-weighing the evidence.

In response, Dramse "relies heavily on the district court's analysis of whether there is substantial evidence in the claim record as [she] believes it is the correct analysis." Rather than imposing a per se duty to investigate, Dramse argues that the district court properly held the Plan to its burden of proof. Dramse contends that the district court neither weighed the evidence nor resolved any conflicting facts. Instead, Dramse asserts, the district court rightly found that there was absolutely no evidence in the record that Dramse was able to work on November 8, 2000.

## II.

"Standard summary judgment rules control in ERISA cases." Vercher v. Alexander & Alexander Inc., 379 F.3d 222, 225 (5th Cir. 2004) (citing Barhan v. Ry-Ron Inc., 121 F.3d 198, 202 (5th Cir. 1997)). The court reviews a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000). "Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(c)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

A plan administrator's factual determinations are only reviewed for an abuse of discretion. Chacko v. Sabre, Inc., 473 F.3d 604, 610 (5th Cir. 2006) (citations omitted); Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 213 (5th Cir. 1999); Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 395 (5th Cir. 1998). Abuse of discretion review is synonymous with arbitrary and capricious review in the ERISA context. See Lain v. UNUM Life Ins. Co. of Am., 279 F.3d 337, 342 (5th Cir. 2002) (citations omitted). "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an

administrator's decision if it is supported by substantial evidence." Meditrust Fin. Servs. Corp., 168 F.3d at 215. "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2005) (citation omitted).

Elsewhere, we have stated that "[a] decision is arbitrary when it is made without a rational connection between the known facts and the decision or between the found facts and the evidence." Jenkins v. Cleco Power, LLC, 487 F.3d 309, 314 (5th Cir. 2007) (internal quotation marks and citation omitted). And we have emphasized that the district court should "only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 297 (5th Cir. 1999) (en banc). A district court may not engage in de novo weighing of the evidence. See Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 601-02 (5th Cir. 1994). Even if the plaintiff's claim is supported by record evidence, the reviewing court must defer to the administrator's decision if the plan administrator's denial is also supported by substantial evidence. Ellis, 394 F.3d at 273 ("We are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance.").

Although we apply this highly deferential standard of review, we have also stated that an administrator's decision to deny benefits must be based on record evidence. See, Lain, 279 F.3d at 342 (citation omitted). In Vega, we explained that this requirement does not create a per se duty to reasonably investigate a claim for benefits. 188 F.3d at 298. The court reasoned that:

> [t]here is no justifiable basis for placing the burden
> solely on the administrator to generate evidence

> relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant. If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require the administrator to obtain that information in the absence of the claimant's active cooperation.

Id. Of course, the lack of a per se rule does not excuse the administrator entirely. While "the administrator has no duty to contemplate arguments that could be made by the claimant, we do expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial." Id. at 299.

In the instant case, the Plan argues that the district court imposed a per se duty on the Committee to investigate her claim because the district court stated that if the Committee's denial was not supported by substantial evidence, it would find for Dramse "regardless of whether [Dramse] . . . supported her entitlement to benefits with record evidence." The Plan reasons that if a plan administrator must produce evidence in response to unsupported claims, it follows that a plan administrator will, in practice, be forced to investigate the most groundless claims. The Plan also notes that an ERISA claimant has the initial burden of demonstrating her entitlement to benefits. Perdue v. Burger King Corp., 7 F.3d 1251, 1254 n.9 (5th Cir. 1993) (citations omitted); see also Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir. 1992) (en banc); Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998) (citation omitted). But if an employee is relieved from having to submit evidence to support the employee's claim for disability benefits, the burden of production and persuasion would shift to the Plan. Finally, the Plan asserts that the district court's standard eradicates the deference due to a plan administrator in the least compelling cases—those where a claimant cannot offer any evidence of entitlement to benefits at all.

We agree with the Plan. The absence of evidence supporting a claim for disability is sometimes, in and of itself, compelling proof that a claimant is not disabled. See Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329, 335 (5th Cir. 2001) (upholding a denial of benefits where the claimant provided no documentation to support the inference that his condition worsened after being placed on unassigned status); Aboul-Fetouh v. Employee Benefits Comm., 245 F.3d 465, 472-73 (5th Cir. 2001) (upholding a denial of benefits where there was no evidence supporting the plaintiff's claim of total disability); Sweatman, 39 F.3d at 602 (upholding a plan administrator's decision where the claimants own medical records did not support his permanent disability claim); Pierre v. Conn. Gen. Life Ins. Co./Life Ins. Co. of N. Am., 932 F.2d 1552, 1563 (5th Cir. 1991) (holding that the plan administrator made a reasonable determination based on the evidence before it after the claimant declined to produce additional information that may have supported her claim). If we were to hold otherwise, we would, in effect, be presuming that a claimant is entitled to disability benefits unless a plan administrator proved that the claimant was not disabled.

Although our above analysis is necessary to establish the proper standard for review of the record in this case, it does not resolve the case. Dramse correctly notes that the district court did not simply find a lack of evidence in the record that Dramse was able to work on November 8, 2000. The district court held that the Plan "has not cited to any record evidence that supports a finding that Plaintiff was not psychologically unable to work as of November 8, 2000, and there is significant contrary evidence." (Emphasis added). Accordingly, Dramse argues that the district court's decision was proper because the only evidence concerning her psychological ability to work as of November 8, 2000, was Dr. Fisher's opinion that she was "essentially psychiatrically disabled during . . . most of the year of 2000." Moreover, she asserts that the Committee's fact-finding was arbitrary and capricious because the Committee "cherry-

picked" the evidence it relied upon and "ascrib[ed] only one conclusion to statements which are indicative of two or more possibilities."

We disagree.  Unfortunately, as a result of the delay in filing the claim, there is little evidence concerning Dramse's mental health on or around November 8, 2000.  Yet all of the contemporaneous evidence that was submitted could rationally be construed to support a denial of benefits.  Thus, Ms. Orndorff, Dramse's psychotherapist, expressed her "hope" on November 29, 2000, that Delta would reinstate her to her previous position.  A reasonable fact-finder could conclude from this statement that at least one of Dramse's mental health care providers believed that Dramse could work during the relevant time period.  Similarly, Dr. Fisher, Dramse's psychiatrist, never indicated in his medical notes that Dramse was disabled by her symptoms in any way.  Nor did he indicate that she should be restricted from working.  The lack of any mental health related restrictions is more compelling in light of the fact that Dramse was previously awarded short-term disability benefits and was periodically excused from work for physical ailments.  A reasonable fact-finder could infer that she did not seek disability benefits for psychological problems at that time because her psychiatrist did not believe her mental health problems precluded her from working.

The district court, of course, viewed the same evidence differently.  The district court was not persuaded that Dr. Fisher's failure to note restrictions of Dramse's work or life activities was indicative of her ability to work because it was unsure whether it was Dr. Fisher's usual practice to record such observations.  While this, too, is a reasonable interpretation, the district court simply chose a different reasonable interpretation than the reasonable interpretation chosen by the Committee.  Similarly, the district court refused to credit Ms. Orndorff's November 29, 2000, letter because it was unclear.  Dramse makes a similar point on appeal, protesting that the Committee "ascrib[ed] only

one conclusion to [a] statement which [is] indicative of two or more possibilities." But that is exactly why the Committee's decision cannot be overturned. Once there is more than one possible conclusion that can be reached from the record evidence, the Plan's selection of a competing possibility must be affirmed. Vercher, 379 F.3d at 231-32. In short, while both the district court's and the Committee's interpretations of the evidence seem reasonable, under substantial evidence review, choosing one of two or more reasonable interpretations does not constitute an abuse of discretion. See id.

Lastly, it must be emphasized that it is Dramse, not the Plan, that bore the burden of proof. The only evidence that she submitted to support long-term disability as of November 8, 2000, was the retrospective letter of Dr. Fisher, stating that she was "essentially psychiatrically disabled during . . . most of the year of 2000." This conclusion, however, does not address whether Dramse was unable to engage "in any occupation whatsoever for compensation or profit, including part-time work." Moreover, the Plan concluded that it was less than reliable because it was secured in aid of Dramse's claim and conflicted with Dr. Fisher's past records. This conclusion is not unreasonable. See Gooden, 250 F.3d at 333-34 ("While it is true that the record contains a letter from Dr. Causey stating that Gooden was disabled, this letter does not undermine Provident's decision, as it was written after Gooden learned he was being terminated, and was unaccompanied by medical evidence indicating that Gooden's condition changed since the last time Dr. Causey had seen Gooden.").

## III.

In conclusion, we VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion. Dramse shall bear the costs of this appeal.