REVISED DECEMBER 18, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2009

Charles R. Fulbruge III
Clerk

No. 09-20087

LAURIE M. COOPER,

Plaintiff-Appellant

v.

HEWLETT-PACKARD CO, Disability Plan

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before BENAVIDES, DENNIS, and ELROD, Circuit Judges.

BENAVIDES, Circuit Judge:

This is an appeal of the district court's grant of summary judgment upholding the denial of Appellant Laurie Cooper's claim for continued disability benefits under the Hewlett Packard Company Disability Plan (the "Plan"), governed by 29 U.S.C. §§ 1001 et. seq. ("ERISA"). Cooper argues that she was denied a full and fair review of her claim and that the denial of benefits was an abuse of discretion because it was not supported by substantial evidence. Based on the following analysis, we affirm the judgment of the district court.

I.

Laurie Cooper worked for Hewlett-Packard ("H-P") for 16 years in the position of content manager, which involved writing documentation regarding how to accomplish certain technical solutions at H-P. Most of her work was performed in front of a computer. As a result of her employment at H-P, Cooper became eligible to receive benefits under the Plan. Benefits provided by the Plan are funded by H-P, and administered by VPA, Inc. ("VPA").

On March 24, 2004, Cooper stopped working at HP. Cooper, then 43 years old, applied for Short Term Disability ("STD") benefits pursuant to § 2(q)(I) of the Plan because of neck and back pain she had been experiencing. Section 2(q)(i)'s definition of "Totally Disabled" provides that "[d]uring the first twenty-six (26) weeks following the onset of an injury or sickness, the Participant is unable to perform the material and essential functions of his Usual Occupation in the Participating Company." The Plan defines "Usual Occupation" as "the customary work assigned to the Participant by the Participating Company which employs the Participant and performed on the Participant's customary schedule . . . ." In support of her claim, Cooper submitted medical evidence, including reports from her psychiatrist, Dr. Riaz Mazcuri, M.D., and another treating physician, Dr. Mehboob Nazarani, documenting chronic back pain, depression, bipolar disorder, and generalized anxiety. On April 20, 2004, VPA approved Cooper's application for STD benefits under § 2(q)(i).

Following the initial 26-week period of STD benefits under § 2(q)(i), Cooper applied for Long Term Disability benefits under § 2(q)(ii) of the Plan. Section 2(q)(ii) provides that a participant is "Totally Disabled" under that section if "[a]fter the initial twenty-six (26) week period and prior to the twenty-four (24) month period following the onset of injury or sickness, the Participant is unable to perform the material and essential duties of his Own Occupation." The Plan

defines "Own Occupation" as "the type of work in which the Participant was engaged prior to the onset of his Total Disability and is not limited to the Participant's Usual Occupation or to jobs that provide any particular earnings level." Cooper submitted evidence of her continuing chronic back pain, depression, bipolar disorder, and generalized anxiety from her treating physician, Dr. Arthur Tullidge. Based on this evidence, VPA determined that Cooper was eligible for disability benefits under § 2(q)(ii), effective September 23, 2004.

On September 19, 2005, VPA again contacted Cooper regarding continuing eligibility for disability benefits, under §2(q)(iii) of the Plan. The §2(q)(ii) period of benefits would end on March 25, 2006, and VPA gave Cooper the opportunity to present any other diagnoses by any other treating physicians. Section 2(q)(iii) imposes a stricter standard for eligibility than those in §§ 2(q)(i) and (ii), requiring a participant to demonstrate that she is unable to perform "any occupation for which he is or may become qualified by reason of his education, training or experience"—not just the participant's "Usual Occupation" or "Own Occupation." Additionally, VPA notified Cooper that, unlike under §§ 2(q)(i) and (ii), under § 2(q)(iii) nervous or mental disorders are disregarded in the determination of the participant's disability.

In support of her claim for benefits under § 2(q)(iii), Cooper submitted medical documentation from several physicians and other medical professionals relating to procedures she underwent to treat her chronic back pain and resulting pain management procedures. On November 1, 2005, Dr. James Rose, a neurosurgeon who examined Cooper following her October 19, 2005 anterior cervical discectomy and fusion surgery, remarked that Cooper's neck and hand were healing well and that Cooper's main problem was a possible kidney stone. Margarita Lyons, P.A., one of Cooper's pain management providers, examined Cooper on January 9, 2006. During the examination, Cooper reported that she

was feeling "much, much better" since the surgery, and that she had been able to decrease all her medications, had started an exercise regimen, planned to lose weight, and was looking for a job. Cooper ranked her pain on a scale of 1 to 10 (with 10 being the worst and 2 to 3 being acceptable) currently as 2/10, usually as 3/10 to 4/10, least pain as 2/10, and most pain as 6/10. Lyons noted further, "The patient has been doing remarkably well. She has been able to decrease some of her medications. She has noted she has a mild increase in anxiety; however, with regard to her pain, she is doing very well." On January 12, 2006, Dr. Tullidge noted that Cooper's condition was "improved," and that Cooper said the "pain [was] gone" and that she was feeling "so much better." Dr. Madhuri Are, also Cooper's pain management provider, examined Cooper on April 10, 2006. Cooper reported to Dr. Are that her pain level was currently 4/10, and usually was a 2/10. Her least pain was a 2/10 and most pain was a 6/10, with 4/10 as the "acceptable" pain level. Dr. Are found "some tenderness" in Cooper's axial region and lower back, but documented that Cooper was in "no acute distress," had a good range of motion, and had well-healed scars.

VPA ordered an independent medical evaluation before determining whether to grant or deny benefits to Cooper under § 2(q)(iii). Dr. Andres H. Keichian, a neurologist, conducted the independent medical evaluation. In his April 19, 2006 report, Dr. Keichian found that Cooper had a moderate range of motions limitation of the cervical and lumbar spine. In evaluating her physical capabilities, Dr. Keichian determined that Cooper was able to stand, walk, sit, and drive for up to four hours each per day for one hour each at a time; occasionally to lift up to 10 pounds, bend, squat, crawl, reach above shoulder level, and fine manipulate with both hands; and frequently to push/pull and simple grasp with both hands. VPA also referred Cooper's file, including Dr. Keichian's report, to a vocational specialist, Renee Lange. Lange used Cooper's medical history, including the physical capabilities determined by Dr. Keichian,

to identify jobs in Cooper's geographic area that Cooper could perform notwithstanding her physical restrictions. Based on this information, Lange identified three positions – program manager, computer operations manager, and department manager – that Cooper could perform and that would not require sitting or standing for more than an hour at a time and allowed for alternating positions. Furthermore, Lange noted these occupations allowed for modifications such as a sit/stand workstation.

On July 19, 2006, VPA denied Cooper's claim for benefits under § 2(q)(iii).[1] The claim denial letter stated that medical and vocational evidence demonstrated that, while Cooper may have been unable to return to her former position as content manager, she was capable of performing other occupations for which she was qualified or could become qualified by the date on which her disability benefits under § 2(q)(ii) ended. VPA highlighted Cooper's improving medical condition, specifically referring to the comments of Drs. Rose and Keichian. VPA also explained that the vocational specialist had considered Cooper's education, training, and experience in addition to Dr. Keichian's evaluation in finding that Cooper could perform the jobs of program manager, computer operations manager, and department manager. VPA noted the fact that Cooper needed to change physical positions every hour in deciding that Cooper could perform the above three occupations.

On February 13, 2007, Cooper appealed VPA's decision. In support of her appeal, Cooper submitted further medical documentation from Dr. Rose. This documentation included a November 28, 2006 note in which Dr. Rose remarked that the "fusion of course [was] healing pretty well at [Cooper's] C5-C6 and C6-C7" discs. He also commented, however, that Cooper "continue[d] to have

---

[1] Up until that point, the Plan had consistently paid Cooper her short-term disability benefits for twenty-four months, pursuant to Sections 2q(i) and (ii) of the Plan. Thus, Cooper's disability payments terminated on March 24, 2006.

some discomfort and neck pain which was aggravated by [her] work." Dr. Rose stated that while the discs that had been operated upon were healing well, Cooper had "degenerative disc disease at other levels above and below the fusion" and that he thought this problem was giving Cooper pain to the point where she was "disabled from [her] work." He commented that he thought Cooper had a "significant physical disability" and that her condition "has prevented [her] from doing any meaningful work, especially doing [her] usual work, which is working at a computer and the like and writing." Dr. Rose concluded that Cooper "[had] found that [she could] not work because of the increased pain."

Additional notes submitted from Dr. Tullidge, Cooper's treating physician, dated March 21, 2006, stated that Cooper would "start [working at the] jewelry store next week," that Cooper's condition was "stable," and that Cooper was "not happy about ending of long term disability." In notes from April 21, 2006, Dr. Tullidge commented that Cooper was "working part time," "experiencing pain," and "tolerat[ing] med[ication]s." On June 28, 2006, Dr. Tullidge noted that Cooper was "working part time (25 hours [per week])" and made no reference to any complaints of pain on the part of Cooper. On September 18, 2006, Cooper saw Dr. Are, one of her pain management providers, for an examination following an epidural injection to reduce pain. Dr. Are documented that Cooper had "increased pain and pain going down her left thigh to her knee." Dr. Are remarked that Cooper was in no acute distress and had intact reflexes. Dr. Are examined Cooper again on October 30, 2006. On that date, Cooper ranked her pain as a 4/10. Dr. Are again documented that Cooper was in no acute distress and had intact reflexes, and commented that she had some tenderness in the low lumbosacral region as well as painful flexation. Dr. Are scheduled Cooper for a caudal epidural steroid injection which was performed the following day, October 31, 2006.

At a January 18, 2007 follow-up visit with Dr. Are after the epidural injection, Cooper reported that pain control following the injection did not last very long, and that her pain was currently at the 4-5/10. During another examination by Dr. Are on February 12, 2007, Cooper ranked her pain as currently at 5/10. Dr. Are remarked that Cooper was working at a jewelry store as a sales clerk and was abiding by her restrictions of "no prolonged sitting or standing for more than 20-30 minutes." He noted that Cooper was in chronic pain due to disc bulges in her thoracic and lumbar spine, that he "strongly doubt[ed]" she was able to work on a full-time basis, and that she was "very restricted" in her abilities and mobility due to her "chronic disabling" pain from disc disease.

VPA requested and received copies of Cooper's pay stubs from her employment as a sales clerk at the jewelry store. The pay stubs indicated that Cooper had been working between 28.44 to 92.61 hours at Ben Bridge Jewelers per two-week pay period since the date her disability benefits ended on April 1, 2006. VPA also considered Cooper's application for Social Security disability benefits. On July 11, 2006, the Social Security Administration denied Cooper's application because of her work and the amount she earned. In an April 17, 2007 letter, Cooper's counsel stated that it was his understanding that Cooper "was denied social security disability benefits because of her part time job at the jewelry store."

On May 16, 2007, VPA denied Cooper's claim on appeal. The denial letter noted Cooper's examination by Physicians Assistant Lyons when Cooper reported that her symptoms were much better and ranked her pain level at 2/10. The letter further stated that VPA had attempted to contact Dr. Keichian following Cooper's request that VPA clarify information with him, but that Dr. Keichian had not responded to VPA's repeated requests for information. VPA did repeatedly note that the fact that Cooper was actually working supported its

conclusion that Cooper could not establish her inability to perform "any occupation" as required to qualify for continuing benefits under the Plan. On May 23, 2007, apparently in response to VPA's earlier request, Dr. Keichian sent a four-sentence letter to VPA, stating that "[t]he primary diagnoses of Mrs. Cooper that impair her ability to work are cervical laminectomy and fusions, persistent spinal pain, and bipolar disease. She also has a retroperitoneal tumor resected, of unclear prognosis. In view of her medical pathology, Cooper is totally disabled and unable to be gainfully employed."

Cooper filed this action against the Plan on September 6, 2007. The district court granted summary judgment in favor of the Plan on January 14, 2009. Reviewing VPA's decision under the abuse of discretion standard, the district court rejected Cooper's position that VPA had shifted the grounds for denying Cooper's claim. The district court noted that, while VPA weighed Cooper's new employment as strong evidence that Cooper did not meet the § 2(q)(iii) standard, Cooper lost her appeal on the same specific grounds as she lost the initial claim: her improved medical condition. The district court determined that substantial evidence supported VPA's denial of Cooper's claim for disability benefits, finding that no doctor had opined that Cooper was unable to perform "any occupation" within the meaning of § 2(q)(iii). The district court highlighted the vocational specialist's finding that Cooper was capable of performing three occupations, and the fact that Cooper herself reported feeling better and planning to lose weight and look for a job. That Cooper did begin employment a few months later, the district court found, tended to confirm that VPA was correct in relying on the signs of improvement shown by the vocational specialist's report and on Cooper's statements about her medical improved condition. Cooper timely appealed.

II.

"Standard summary judgment rules control in ERISA cases." Vercher v. Alexander & Alexander Inc., 379 F.3d 222, 225 (5th Cir. 2004). This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007). Under de novo review, we "review the Plan's decision from the same perspective as did the district court, and we directly review the Plan's decision for an abuse of discretion." Meditrust Fin. Servs. Corp. v. Sterling Chems. Inc., 168 F.3d 211, 214 (5th Cir. 1999)

When an ERISA benefits plan provides the plan administrator with discretionary authority to construe the terms of the plan, the plan administrator's denial of benefits is reviewed for abuse of discretion.[2] Gosselink v. American Tel. & Tel. Inc., 272 F.3d 722, 726 (5th Cir. 2001). Abuse of discretion review is synonymous with arbitrary and capricious review in the ERISA context. Meditrust, 168 F.3d at 214. "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence." Id. at 215. "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2005). A decision is arbitrary only if made without a rational

---

[2] The parties do not dispute that VPA, the Plan's administrator, has discretionary authority to construe the terms of the Plan. Cooper argues in her brief that the abuse of discretion standard applicable to administrators with discretionary authority may be altered in light of Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343 (2008). However, Glenn addressed only the standard of review employed when the administrator has a conflict of interest, i.e. where a plan administrator "both evaluates claims for benefits and pays benefits claims." 128 S.Ct. at 2348. Here, as Cooper conceded, there is no conflict of interest because H-P employs VPA—a contract administrator—to evaluate claims under the Plan. Therefore, the Court's holding in Glenn does not affect the standard of review employed in this instance.

connection between the known facts and the decision or between the found facts and the evidence. Meditrust, 168 F.3d at 215 (citation omitted).

III.

First, Cooper argues that she was denied the full and fair review mandated by § 1133 (2) of ERISA because VPA did not provide review of its specific basis for rejecting her claim. 29 U.S.C. § 1133(2). To comply with the "full and fair review" requirement in deciding benefit claims under ERISA, a claim administrator must provide the specific grounds for its benefit claim denial. Robinson v. Aetna Life Ins. Co., 443 F.3d 389, 393 (5th Cir. 2006). Challenges to ERISA procedures are evaluated under the substantial compliance standard.[3] See Lacy v. Fulbright & Jaworski, 405 F.3d 254, 257 (5th Cir. 2005). Viewing her appeal in light of the substantial compliance standard, we conclude that Cooper received a full and fair review of the specific grounds upon which her benefit claim was initially denied.

Cooper's claim that VPA changed its basis for denying her claim on appeal is without merit. VPA's basis for denying Cooper's claim on appeal was the very same as its original basis: the fact that her medical evidence failed to establish that she was incapable of employment.[4] Cooper's claim for long-term disability

___

[3] Given the fact that we review VPA's decision on appeal under the substantial compliance standard, we are puzzled as to why the dissent attempts to cast the Court's decision as a review for harmless error. In contrast to the dissent's assertion that we have reviewed Cooper's appeal for "any grounds in the record to support the judgment" Mangaroo v. Nelson, 864 F.2d 1202, 1204 n.2 (5th Cir. 1989), a more thorough review of the analysis contained herein clearly demonstrates that VPA's decision on appeal has been reviewed in full compliance with the correct standard. See Lacy, 405 F.3d at 257 (holding that "the substantial compliance standard" is the appropriate standard of review). It is under this substantial compliance standard of review that we conclude that Cooper did receive a "full and fair review" of the VPA's initial determination that her medical condition did qualify as a "Total Disability" under the Plan.

[4] The definition of "Total Disability" requires Cooper to demonstrate that, due to her alleged medical condition, she "is continuously unable to perform any occupation for which [s]he is or maybe become qualified b y reason of [her] education, training or experience." (emphasis added).

benefits was originally denied because, based upon a review of the medical evidence in her record, "it was determined that [she] could perform the following jobs: Program Manager[;] Computer Operations Manager[; and ] Department Manager."[5] When Cooper appealed VPA's initial decision, her own medical records from Anderson Cancer center indicated that she "was employed at Ben Bridge Jewelers, Inc." Thus, on appeal, VPA reviewed its original assessment of the medical evidence (that is, the assessment that she was capable of employment), coupled with her medical records from Anderson Cancer Center indicating she was in fact employed, and concluded that its original assessment regarding Cooper's lack of a "Total Disability" was correct.

Cooper, however, contends that VPA changed its original grounds for denying her claim when, on administrative appeal, VPA referenced Cooper's subsequently acquired part-time job– instead of referring exclusively to the medical and non-medical evidence the Administrator relied upon in the original denial of benefits. To support this position, Cooper relies on this Court's decision in Robinson, in which this Court held that "section 1133 requires an administrator to provide review of the specific ground for an adverse benefits decision."[6] 443 F.3d at 393. Cooper, therefore, avers that because VPA

---

[5] Thus we consider it important to note that VPA's initial assessment of Cooper's condition was not an assessment of medical records alone. In addition to the medical records from her doctors, VPA consulted with a vocational specialist. Based on the vocational specialist's review that Cooper was capable of performing several different occupations, coupled with her medical records, VPA concluded that Cooper was "capable of performing other occupations for which [she was] or could become qualified as of March 25, 2006."

[6] Cooper, however, is mistaken in her assertion that VPA relied on her recently acquired employment as the "specific grounds" for affirming the Administrator's decision. While the review letter did highlight the fact that Cooper had subsequently acquired employment, the review letter first discussed, in great detail, the significance of the medical records that alone initially supported the Administrator's denial of Cooper's claim. The review letter noted that Cooper had to establish she was disabled, under § 2(q)(iii) of the Plan, by March 25, 2006, the day her initial period of disability benefits ended. The letter then noted that on January 9, 2006, less than three months before the date she needed to qualify for long term disability under 2(q)(iii) of the Plan, she was evaluated by the Anderson Cancer Center and was assessed

11

highlighted the Anderson Cancer Center records proving her employment in its review letter denying her claim, VPA failed to lawfully provide review of the "specific grounds" for the Administrator's original adverse benefits decision.

Cooper's interpretation of Robinson is mistaken, and provides the Court with the opportunity to highlight the significant differences between the bait and switch tactic at issue in Robinson, and the honest, fair, and full review Cooper received here, with VPA. Cooper's argument that Robinson applies is misplaced because although the VPA mentioned a new, additional fact that the Administrator had not considered in the initial denial of her claim (this new fact being her employment), the mention of that new fact did not constitute different or separate "specific grounds" for the initial denial of Cooper's claim. Instead, the specific ground remains the same: the Administrator denied her claim on the grounds that she failed to demonstrate with sufficient medical evidence that she was unable to perform "any occupation" as required under § 2(q)(iii) of the Plan. The fact that Cooper is now gainfully employed does not provide the VPA with a different basis for affirming the Administrator's initial denial of Cooper's claim, but rather, it provides the VPA with a concrete affirmation that the Administrator's original assessment of the medical evidence in the record was correct.

Thus, while the Court agrees with Cooper that Robinson mandates that as a claimant, she "be specifically notified of the reasons for an administrator's decision" regarding the denial of her application (443 F.3d at 393), the Court disagrees with Cooper that she was not notified of the specific reasons

---

as feeling decreased symptoms, requiring less medication, undertaking an exercise regimen, and looking for employment. The review letter stated that at that time, Cooper reported her "symptoms were much better" and her pain was only a 2/10. It is with great import that we note that VPA did not discuss Cooper's employment until after first discussing the significance of the medical evidence on record that established Cooper was capable of employment as of January, 2006–prior to any recorded employment.

supporting the Administrator's decision in her case. The present case does not contain the bait and switch tactic this Court was presented with in Robinson.[7] In contrast to Robinson, this is not a case where the claimant's claim was initially denied based on a factual assessment that the claimant was physically capable of performing a certain task necessary to a certain occupation, and then on administrative appeal, denied based on a new interpretation from a vocational expert that the performance of that task was no longer considered necessary to the claimant's ability to maintain that certain occupation. That is, in the present case, VPA did not change the analysis at hand to conclude that the original basis for denying Cooper's claim had become superfluous, but instead, VPA observed that this new evidence merely supports the VPA's conclusion that the original assessment of the medical and vocational evidence on record is correct.

The dissent mistakenly reads our precedent in both Robinson and Lafleur v. La. Health Serv. & Indem. Co., 563 F.3d 148 (5th Cir. 2009), as requiring us to conclude that Cooper did not receive a "fair and full review." As support for this proposition, the dissent cites VPA's review letter on appeal, specifically the sentence: "As a result, Ms. Cooper does not meet the any occupation definition of disability noted above." According to the dissent, VPA's use of "[a]s a result," following its discussion of Cooper's employment, indicates that the basis for VPA's decision on appeal changed from Cooper's ability to maintain employment to the fact that she is maintaining employment. Such a shift does not indicate a shift in the basis that first formed VPA's decision, but rather, highlights two different aspects of the same basis for denying Cooper's claim: her ability to

---

[7] In Robinson, the Court concluded that the procedural requirements of § 1133 were not met where the plaintiff was initially denied disability benefits on the grounds that his vision had improved sufficiently, but was subsequently denied benefits on appeal on different grounds—namely that good vision was not necessary to meet the definition of 'capable of employment' under that plan. 443 F.3d at 393.

maintain employment. The shift in language the dissent points to constitutes nothing more than a technical noncompliance. In both Robinson and Lafleur, this Court recognized that such a "technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled." Lafleur, 563 F.3d at 154 (quoting Robinson, 443 F.3d at 393).

In the present case, there can be no doubt that "the purpose of section 1133 has been fulfilled." Id. "The purpose of section 1133 is 'to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial.'" Id. (quoting Schneider v. Sentry Long Term Disability, 422 F.3d 621, 627-28 (7th Cir. 2005)). And in Robinson, we concluded the purpose behind "mandating review of the specific ground for a termination [was to] encourag[e] the parties to make a serious effort to resolve their dispute at the administrator's level before filing suit in district court." 443 F.3d at 393.

Here, Cooper received notice that her claim was denied because VPA considered her capable of employment. It should come as no surprise that on appeal, VPA would consider her employment to be an affirmation that its original assessment of the medical evidence was correct. Because VPA's initial reason for denying Cooper's claim was the conclusion that her medical evidence indicated she was capable of employment, we cannot read § 1133(2) to require VPA to blind itself to the fact that Cooper, on appeal, is arguing she cannot maintain employment–while simultaneously maintaining employment. It is an insurmountable challenge to imagine just how requiring Administrators to ignore the disability claimant's medical records mentioning a claimant's current employment would serve to resolve a dispute before it reaches the district court.

That is, were we to agree with the dissent and send Cooper's claim back to VPA based on the dissent's analysis, we would be sacrificing the true statutory purpose behind section 1133's "fair and full review" for an unfortunate adherence to counterproductive technicalities. To attribute such a flawed

14

reading to § 1133(2) would make a mockery of ERISA's "full and fair review" and undermine the integrity of the administrative process as whole.

Where the evidence of subsequently acquired employment merely serves to support the Administrator's original decision to deny the claimant's claim based on the medical evidence contained within the record, we decline to interpret 29 U.S.C. § 1133(2) as requiring VPA to blind itself to the fact that the claimant is asserting she cannot maintain employment and simultaneously maintaining employment. Cooper had an adequate and fair opportunity to put forth evidence demonstrating that she cannot maintain "any occupation" as required under § 2(q)(iii) of the Plan. The record reveals that she failed to adequately do so.

IV.

Cooper also contends that there is no "concrete evidence" to support VPA's finding that she not unable to perform "any occupation," as required by §2(q)(iii) of the Plan.[8] Cooper relies heavily on Dr. Keichian's May 23, 2007 addendum letter to VPA, which stated that "[t]he primary diagnoses of Mrs. Cooper that impair her ability to work are cervical laminectomy and fusions, persistent

---

[8] Cooper argues that "any occupation for which [Cooper] is or may become qualified by reason of [her] education, training or experience," the language used in §2(q)(iii) of the Plan, should not include the ability to perform part-time work such as the work she performed at the jewelry store. However, there is no such restriction in the Plan. See Dramse v. Delta Family-Care Disability and Survivorship Plan, 269 F. App'x 470, 481 (5th Cir. March 12, 2008) (affirming the district court's holding that the term "any occupation" included part-time work); Doyle v. Paul Revere Life Ins. Co., 141 F.3d 181 (1st Cir. 1998) (holding that claimant's ability to perform part time work precluded him from establishing that his disability prevented him from engaging in "any occupation for which he is or may become suited by education, training or experience"). Even if the Plan language would not apply to part-time work, there is evidence in the record, namely the analysis of the vocational consultant, that Cooper could perform work for eight hours a day in alternating positions.

spinal pain, and bipolar disease. She also has a retroperitoneal tumor resected, of unclear prognosis. In view of her medical pathology, Ms. Cooper is totally disabled and unable to be gainfully employed." We are not persuaded that this evidence undermines support for VPA's decision that Cooper was not disabled as defined under 2(q)(iii) of the Plan. There is no evidence to show that Dr. Keichian examined Ms. Cooper during the time between his original report—which concluded that Cooper could stand, walk, sit and drive for one hour each at a time, for a total of four hours per day of each activity—and his addendum. His addendum does not cancel out the specific findings in his original evaluation. Furthermore, Dr. Keichian's conclusory statement that Cooper is "totally disabled" does not suffice to establish disability under the language of the Plan, a determination which is a legal conclusion left to the Plan administrator. Cf. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003) (noting that a doctor's conclusion that a social security disability applicant is "disabled" or "unable to work" is not a medical opinion entitled to deference, but rather a legal conclusion "reserved to the Commissioner" ). Dr. Rose's and Dr. Are's statements to the effect Cooper was incapable of "meaningful work" and "full-time work"—though entitled to some weight—are similarly inconclusive of the determination of disability under the language of the Plan. Under § 2(q)(iii), Cooper was required to demonstrate she was unable to perform "any occupation"; there were no limitations as to earnings level, or whether the work was "meaningful" or "gainful[]" employment.

Support for the plaintiff's claim is not controlling because we must defer to the administrator's decision if the plan administrator's denial is supported by substantial evidence. Ellis, 394 F.3d at 273 ("We are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance."). VPA's conclusion that Cooper is not disabled as defined in

§ 2(q)(iii) of the Plan is supported by substantial evidence. Lange, the vocational specialist, found that Cooper was able to perform three occupations based on the physical activities that Dr. Keichian found her capable of performing: program manager, computer operations manager, and department manager. Furthermore, Dr. Are noted significant improvements in Cooper's condition and acknowledged Cooper's ability to perform part-time work. The letter denying Cooper's claim on appeal noted that Cooper had to establish she was disabled, under § 2(q)(iii) of the Plan, by March 25, 2006, the day her initial period of disability benefits under another part of the Plan, § 2(q)(ii), ended. Approximately three months before the date on which Cooper needed to qualify for benefits under § 2(q)(iii), Lyons noted that she had been able to decrease all medications, had started an exercise regimen, planned to lose weight, and was looking for a job.

Cooper's claims that no "concrete evidence" supports VPA's conclusion is even further undermined by the fact that Dr. Tullidge, her own treating physician, stated on March 21, 2006 that she would "start [working at the] jewelry store next week," that Cooper's condition was "stable," and that Cooper was "not happy about ending of long term disability." In notes from April 21, 2006, Dr. Tullidge commented that Cooper was "working part time," "experiencing pain," and "tolerat[ing] med[ication]s." On June 28, 2006, Dr. Tullidge noted that Cooper was "working part time (25 hours [per week])" and made no reference to any complaints of pain on the part of Cooper. That is, the medical evidence in the record indicates not only that Cooper hypothetically could maintain employment, but rather, her medical records demonstrate that at the time of VPA's initial July 19, 2006 decision, Cooper was maintaining gainful employment.

Thus, we conclude that the record contains substantial evidence to support VPA's conclusion that Cooper did not meet the definition of "Total Disability"

since following the termination of her benefits under § 2(q)(ii) of the Plan, she was not unable to perform "any occupation" as required by §2(q)(iii).

V.

Based on the foregoing analysis, the judgment of the district court upholding the administrator's denial of benefits is AFFIRMED.

JENNIFER W. ELROD, Circuit Judge, dissenting:

The majority deviates from the "substantial compliance" standard and affirms VPA's decision based on a reason VPA never gave when it initially terminated Cooper's benefits. We may typically affirm the district court on "any grounds in the record to support the judgment." Mangaroo v. Nelson, 864 F.2d 1202, 1204 n.2 (5th Cir. 1989). This is not our standard, however, when we review the procedural adequacy of an administrator's review of a benefit termination, as "substantial compliance" with 29 U.S.C. §1133(2) requires that a plan administrator disclose the precise "basis for its decision . . . so that beneficiaries can adequately prepare for any further administrative review, as well as an appeal to the federal courts." Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 394 (5th Cir. 1998) (citation and internal quotation marks omitted). At the review stage, VPA based its decision solely on a ground raised for the first time, which Cooper has never had an opportunity to contest on the merits at the administrative level. It is not our task to recast this flawed review as having had another basis, as such a result deprives Cooper of her right to a "full and fair review" mandated by § 1133(2). See Lacy v. Fulbright & Jaworski, 405 F.3d 254, 257 (5th Cir. 2005). Accordingly, I dissent.

VPA's review of Cooper's original benefits termination did not comport with the requirements set out in § 1133 and this court's interpretation of those requirements. ERISA requires that every employment benefit plan "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant" and "(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named

fiduciary of the decision denying the claim."[1] § 1133 (emphasis added). In Robinson v. Aetna Life Ins. Co., this court interpreted these subsections to require a review of the "specific reasons" given in the initial claim denial "rather than [a review of] the termination of benefits generally." 443 F.3d 389, 393 (5th Cir. 2006). An ERISA claimant is confined to the administrative record when appealing her denial of benefits to the courts. Following her initial denial, the claimant's sole opportunity to submit evidence for inclusion in the record is at the administrative appeal stage. It therefore is imperative that the administrator give the "specific reasons" for its denial of a claim so that the claimant has a fair opportunity to gather evidence to submit for the record, with which the claimant will challenge the specific reasons for denial.[2] Where a claimant is not given a review of the specific reasons for the original termination of her benefits, she is denied her right to a "full and fair review" guaranteed under 29 U.S.C. § 1133. Robinson, 443 F.3d at 393.

## A.

I would hold that Cooper was denied a full and fair review because, just as the court found in Robinson: "the specific reason for terminating [Cooper's] benefits has never been reviewed at the administrative level." Id. Both parties agree that Cooper's benefits were originally terminated on the basis that

---

[1] Further, 29 C.F.R. § 2560.503-1(g) requires that an ERISA claim denial letter

"set forth in a manner calculated to be understood by the claimant–(I) [t]he specific reason or reasons for the adverse determination, (ii) [r]eference to the specific plan provisions on which the decision is based, (iii) [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary."

[2] See Shadler v. Anthem Life Ins., 147 F.3d 388, 394 (5th Cir. 1998) (explaining that a plan administrator must "disclose the basis for its decision" so "beneficiaries can adequately prepare for any further administrative review."(internal quotation marks omitted)); accord Robinson, 443 F.3d at 393 ("[E]ffective review requires 'a clear and precise understanding of the grounds for the administrator's position.'" (quoting Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, (7th Cir. 2003)).

Cooper's spinal condition had improved to the point that she would not meet the 2(q)(iii) definition of "Totally Disabled." A different reason—Cooper's employment at Ben Bridge Jewelers, which she acquired after the relevant date to determine benefit eligibility—was given for her benefit termination on appeal. The majority attempts to characterize VPA's decision on appeal as one based on Cooper's "medical evidence," with Cooper's new employment serving "merely [as] support [for] the Administrator's original decision to deny the claim based on the medical evidence contained within the record." The plain reading of the review letter supports no such interpretation.

In regard to the medical evidence supporting Cooper's improved health condition—the sole reason given for Cooper's original termination of benefits— the two-and-a-half page, single-spaced review letter offered only three terse sentences:

> During the office examination, Ms. Cooper reported that her symptoms were much better. She reported a decrease in pain medications, starting an exercise regiment, and was looking for a job. She ranked her pain at 2/10.[3]

These sentences offer no insight on the propriety of VPA's original determination regarding whether these improvements disqualified Cooper from meeting the definition of "Total Disability." Rather, they are mere recitations of facts contained in the record accompanied by no analysis. The majority states that these sentences immediately followed a discussion of "the significance of the medical evidence on record that established Cooper was capable of employment." The paragraphs in question, however, provide no "discussion" or analysis of the evidence. Rather, they contain only a listing of Cooper's ailments, rote

---

[3] The letter is attached as an Appendix.

descriptions of the procedures she underwent to correct them, and descriptions of documents in the record that attest to these facts. These paragraphs are analogous to the "fact" section in a judicial opinion, as they contain no language weighing or judging the evidence. The actual analysis of the claim begins with a paragraph discussing Cooper's employment:

> As you are aware, Ms. Cooper's claim and appeal are being reviewed based on the definition of Total Disability noted above. . . . We noted in the medical records from Anderson Cancer Center that Ms. Cooper was employed at Ben Bridge Jewelers, Inc.

Thereafter, VPA focuses on the Ben Bridge Jewelers job throughout the remainder of the letter.

The majority nevertheless suggests that Cooper's jewelry store employment, which Cooper accepted only after the relevant deadline for establishing her benefit eligibility, and thus could not have been considered at the time of her original benefit termination, was simply "support" for VPA's ultimate conclusion based on her health improvements.[4] This is not the case. If the jewelry store discussion was merely "support," like suspenders added to an existing belt, VPA's analysis could stand on its own without them. But if the portions of the letter which discuss the jewelry store job are removed, all that remains is a bare-bones factual summary, concluding with a statement that

---

[4] There is no indication in the review letter that VPA intended to cast Cooper's employment as supporting evidence of its earlier determination that her health had improved to the point that she was not "Totally Disabled." Even if her employment could logically be considered support for VPA's original decision regarding the medical evidence concerning Cooper's health status, we may not affirm based on the adequacy of a correlation that VPA did not actually make. When we are judging the procedural adequacy of a review of a benefit termination under ERISA, we determine whether the affirmation was based on a review of the original "specific reason" given for termination. See Lafleur v. La. Health Serv. & Indem. Co., 563 F.3d 148, 155–56 (5th Cir. 2009).

"[w]e are therefore, reaffirming the termination of benefits effective March 25, 2006." By themselves, the three sentences on Cooper's improved health, which constitute no more than factual recitations, are woefully insufficient to constitute a "meaningful review" of this reason for terminating her benefits. See Robinson, 443 F.3d at 393.

Despite these inadequacies, the majority contends that no bait-and-switch occurred as the review had the same "basis" as the original termination: Cooper's "ability to maintain employment." This might be correct if the initial termination letter had given, as a reason for decision, Cooper's ability to maintain some form of employment, regardless of the skill-level or experience necessary to perform some occupation. This was not its reasoning, however. The specific reason given for the initial termination was that medical evidence demonstrated Cooper was able to perform certain managerial jobs related to her "education, training, [and] experience." Although the majority may believe that "Total Disability" under 2(q)(iii) is determined without regard to a beneficiary's experience, education, or training, such an interpretation must be recognized for what it is—a decision on the merits, not a "specific reason" supplied by the VPA in the initial termination. Section 2(q)(iii) defines Total Disability as being "continuously able to perform any occupation for which [s]he is or may become qualified by reason of [her] education, training or experience" (emphasis added). The initial termination letter never stated that Cooper's ability to be employed in any occupation would bar her from obtaining benefits. To the contrary, this letter explicitly considered Cooper's "education, training, and experience," in determining that medical evidence supported Cooper's ability to perform certain skilled managerial occupations which offered compensation comparable to the $95,000 salary she earned as a manager at Hewlett-Packard. Therefore, any subsequent finding on appeal based on Cooper's mere ability to "maintain" some form of employment must be considered a new and separate basis.

23

The majority also suggests that the medical evidence and Cooper's jewelry store employment are not really two different reasons, but merely "two different aspects of the same basis for denying Cooper's claim: her ability to maintain employment." But a supporting factor must be considered a separate basis when its omission from the initial termination decision prevents the beneficiary from being able to "adequately prepare . . . for any further administrative review, as well as an appeal to the federal courts." See Robinson, 443 F.3d at 493 (quoting Schadler, 147 F.3d at 394). Cooper's employment here must be considered a separate basis, rather than support, where its omission from the initial termination letter deprived Cooper of the opportunity to adequately prepare for her appeal.

As noted by the district court, Cooper's benefits were initially terminated for the specific reason that her medical condition had "improved" to the point where she no longer met the definition of "Total Disability." Cooper dedicated her efforts to assembling medical evidence to refute this "specific reason," but this evidence was disregarded totally because Cooper was "in fact working."[5] Cooper's potential to perform a non-technical, non-managerial sales position was not implicated by the specific reason given in the initial termination letter, so Cooper was never on notice that she should argue that her ability to perform some occupation does not preclude her from showing "Total Disability." In its haste to terminate Cooper's benefits because she "was working," VPA denied Cooper any opportunity to present evidence that her work at the jewelry store was not

---

[5] Dr. Keichian provided the medical evidence about Cooper's limitations and restrictions which the vocational specialist then used in concluding that Cooper could perform certain skilled jobs, which were noted in the initial termination letter. In the months following Dr. Keichian's initial report, during which time Cooper alleges that her health deteriorated, Cooper sought an addendum to Dr. Keichian's report. After the appeal, VPA received Dr. Keichian's addendum, which concluded that she was unable to work due to her medical impairments, but the appeals manager affirmed the decision on the ground that "Cooper is in fact working."

24

sufficiently related to her college education and skilled work history to impact her eligibility under section 2(q)(iii). She was likewise denied the chance to rebut VPA's conclusion that she worked overtime at the jewelry store. She contends on appeal that she actually worked less than forty hours per week, but that any work performed on Saturdays was labeled as "overtime" pay on her pay-stubs. The lack of notice that her jewelry store employment would be a basis for decision prejudiced Cooper's ability to alter VPA's decision terminating her benefits. If the requirement that an administrator provide a "full and fair review" means anything, it must mean that a plan administrator may not deny the claimant the opportunity to refute the specific reason given in the initial determination under the guise of labeling a new basis as mere "support" for the old.

## B.

The review of Cooper's benefit termination was also insufficient for the second reason espoused in Robinson: Cooper "never had an opportunity to contest at the administrative level [the] new basis for terminating [her] benefits." See Robinson, 443 F.3d at 493. Although the majority attempts to cast a Robinson-style bait-and-switch as the only manner in which an administrative review can run afoul of substantial compliance with ERISA's procedural review requirements, our precedent identifies another. Even in absence of a bait-and-switch, an ERISA administrator does not meet the standard of "substantial compliance" with the requirements of § 1133 where the initial notice of termination relies on one ground for termination, and additional grounds are provided and relied upon on appeal. Lafleur v. La. Health Serv. & Indem. Co., 563 F.3d 148, 155–56 (5th Cir. 2009); see also McCartha v. Nat'l City Corp., 419 F.3d 437, 446 (6th Cir. 2005).

In summarizing its reasons for affirming the initial decision to terminate benefits, VPA unmistakably characterized its decision as one based primarily, if not exclusively, on Cooper's employment:

> It is your contention Ms. Cooper is Totally Disabled for any occupation. In fact, Ms. Cooper is employed for another employer. She is performing the job of a Sales Clerk for Ben Bridge Jeweler, Inc. and has been doing so since the end of March 2006. As a result, Ms. Cooper does not meet the any occupation definition of disability noted above. We are therefore, reaffirming the termination of benefits effective March 25, 2006.

(emphasis added). Cooper's employment was again singled-out as the reason for decision in VPA manager's review following the receipt of Dr. Keichian's requested addendum containing medical evidence that Cooper was totally disabled. Instead of relying on the new medical information, the VPA manager's review again affirmed the decision based on Cooper's employment: "[Dr. Keichian] has indicated 'in view of her medical pathology, Ms. Cooper is totally disabled and unable to be gainfully employed.' While this is his opinion, the fact remains that [Cooper] is in fact working and therefor does not meet the . . . definition of disability under the Plan. My reaffirm stands." At a minimum, these conclusory statements dispel any notion that Cooper's employment was something less than a free-standing reason for VPA's decision.

These statements establish that Cooper's employment was a separate basis, if not the only basis, for VPA's decision on appeal. The majority's opinion attempts to brush off VPA's reliance on Cooper's employment as an irrelevant "mention of [a] new fact," as if the mention of Cooper's employment consisted of

some single insignificant phrase, buried somewhere in a thorough analysis of medical evidence. The review letter's focus on the consequences of Cooper's jewelry store employment, detached from any analysis of the medical evidence, and the manager review's express reliance upon Cooper's employment dispel any such notion. As such, our established precedent prevents a finding of substantial compliance. See Lafleur, 563 F.3d at 156 ("[D]efendants were not in substantial compliance with the requirements of § 1133 because McCartha was never timely informed that the failure to provide current medical opinions as to her long-term disability would be one of the bases for the termination of her benefits."(quoting McCartha, 419 F.3d at 446)).

Where a plan administrator "fails to substantially comply with the procedural requirements of ERISA," as VPA failed to do in this case, "[r]emand to the plan administrator for full and fair review is usually the appropriate remedy." Id. at 157. It is true that remand is unnecessary where it would amount to no more than a "useless formality," but this futility exception is "narrowly construed and sparingly applied," as an "administrator's failure to substantially comply with the procedural requirements of ERISA will usually prevent a plaintiff from adequately developing the administrative record and presenting his arguments."[6] Id. at 158 n.22. Here, no one can contend seriously that remand would be futile. Cooper was unaware that her jewelry store

---

[6] Our circuit gives the "useless formality" exception a narrower interpretation than the Sixth Circuit. Compare Lafleur, 563 F.3d at 158 n.22 (noting that the exception is appropriate only in rare circumstances, such as when "much or all" of the evidence supports a finding that the plaintiff is not covered under the policy's terms, or when the plaintiff dies and submitting new evidence is impossible), with McCartha, 419 F.3d at 445 (6th Cir. 2005) (holding that remand is a "useless formality" where the plan administrator provides one reasonable basis for denying benefits, even if another reason is given for denying the claim of which the petitioner was previously unaware).

employment would be the basis of her benefit termination on appeal, and this lack of notice denied her the opportunity to present these arguments and include information about the jewelry store job in the administrative record. Therefore, she has yet to receive the "full and fair" review which ERISA guarantees her by right. Accordingly, I would vacate the district court's decision and remand the case to the plan administrator to be reviewed in compliance with the procedural requirements of ERISA. I express no view as to what the ultimate outcome on the merits ought to be.

I respectfully dissent.

# Appendix



VPA, INC., / P.O. BOX 9830 / CALABASAS, CA 91372-0830 / TEL: (800) 599-7790/ FAX: (818) 591-7664
Visit us on the Internet at www.VPAinc.com

May 16, 2007

Bernis, Roach & Reed
4100 Duval Rd, Blding 1, Ste 200
Austin, TX 78759

Re:     Laurie Cooper
        Hewlett-Packard Company - LTD
        Claim #: 600224

Dear Mr. Reed:

We have made a careful review of Ms. Cooper's claim and appeal of the decision to terminate benefits under her employer's Long Term Disability Plan for the period of March 25, 2006 and continuing.

The Hewlett-Packard Company Plan defines Total Disability following the initial 24-months as:

"(q)     "Totally Disabled" and "Total Disability" mean the because of injury or sickness:

        (iii)     Following the initial twenty-four (24) month period after onset of the injury or sickness, the Participant is continuously unable to perform any occupation for which he is or may become qualified by reason of his education, training or experience."

In addition, the Plan states:

"With respect to any Total Disability caused or contributed to by mental illness or alcohol or drug abuse, the following limitations shall apply:

(A) Mental Illness

During the period described in (iii) above, nervous or mental disorders shall be disregarded in the determination of Total Disability. An illness shall be considered a nervous or mental disorder if:

        (1) The illness has psychological or behavioral manifestations or results in impairment or mental functioning due to any causes including, but not limited to, social, psychological, genetic, physical, chemical or biological; and

        (2) The illness a primary diagnosis that either is listed in the American psychiatric Association's Diagnostic and Statistical Manual of Mental

[county ID:2763271 (1/3)]

COOPER00286

Disorders, Fourth Edition-Revised (or the successor thereto), or falls within diagnostic codes 290 through 319 in the International Classification of Diseases, 9th Revision (or the successor thereto).

The limitations of this paragraph (A) shall not apply to a Total Disability due to Alzheimer's disease, multiple sclerosis, amyotrophic lateral sclerosis, traumatic brain injuries, schizophrenia, or other organic, degenerative, progressive diseases as determined by the Claims Administrator."

The Plan further states under Section 5. (c), Duration of Benefit:

"A Participant who is receiving the benefit under this Section 5 shall continue to do so until the earliest of the following dates:

(iv) The date the Participant becomes self-employed or the employee of another employer without previously having given written notice of such employment to the Claims Administrator and receiving approval pursuant to Section 5(i)."

The information in file documents Ms. Cooper was claiming Total Disability as a result of cervical spinal stenosis, status post laminectomy and fusion, status post resection or the right retoperitoneal paraganglioma, status post left carpel tunnel release, status post radiofrequency ablation of right L2 to S1 median branch nerves. There is also documentation that Ms. Cooper suffers from chronic depression, bipolar disorder, and anxiety. The chronic depression, bipolar disorder and anxiety all fall under the 24-month Plan limitation for mental/nervous conditions and cannot be taken into consideration for determining Total Disability after the initial 24-months.

The initial 24-month period for Ms. Cooper's claim ended on March 24, 2006, with the above definition of disability, limitations and restrictions applying to the claim effective March 25, 2006. It is on this date the Ms. Cooper must establish she met the above definition of disability for a condition not limited to the initial 24-month period by the Plan.

Medical records from Anderson Cancer Center dated January 9, 2006 document Ms. Cooper underwent radiofrequency ablation of the median branch from L2 to S1, right side, on October 12, 2005. She again had radiofrequency ablation of the median branches from L1 through l5, including the sacral ala and S1, on October 20, 2005. During the office examination, Ms. Cooper reported that her symptoms were much better. She reported a decrease in medications, starting an exercise regimen, and was looking for a job. She ranked her pain at 2/10.

In your letter of appeal, you asked that we clarify information with the IME physician, Dr. Keichian. Your request to clarify information was forwarded to Dr. Keichian. To date, despite follow-ups, we have not had a response.

As you are aware, Ms. Cooper's claim and appeal are being reviewed based on the definition of Total Disability noted above. Ms. Cooper must be Totally Disabled for any occupation for which, she is or may become qualified by reason of his education, training or experience. We noted in the medical records from Anderson Cancer Center that Ms. Cooper was employed at Ben Bridge Jewelers, Inc. As requested, you furnished our office with copies of her pay stubs from her employment. The pay stubs in file document Ms. Cooper has been employed with Ben Bridge Jeweler, Inc. beginning with the pay period that ended April 1, 2006, with the most recent

[curry] ID:2763271 (2/3)

COOPER00287

pay stub provided covering payroll through the pay period ending February 18, 2007. Although this position has been represented as part-time, many of the pay period provided represent full-time hours, and often exceed full-time hours.

The Provision noted above documents benefits will end at the point the employee fails to request advance written approval for self-employment or employment with another employer. Ms. Cooper never made us aware of her employment.

It is your contention Ms. Cooper is Totally Disabled for any occupation. In fact, Ms. Cooper is employed for another employer. She is performing the job of a Sales Clerk for Ben Bridge Jeweler, Inc. and has been doing so since the end of March 2006. As a result, Ms. Cooper does not meet the any occupation definition of disability noted above. We are therefore, reaffirming the termination of benefits effective March 25, 2006.

This decision is the Claim Administrator's final decision. You have the right to bring a civil action under ERISA 502 (a). You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits.

We regret that our response could not have been more favorable.

Should you have any questions, please feel free to contact our office at (800)599-7790.

Sincerely,

Janet Curry
Appeals Manager

cc: Hewlett Packard Company

COOPER00288