# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 10, 2013

Lyle W. Cayce
Clerk

No. 12-20085

CHARLENE CURLEY,

Plaintiff-Appellant

v.

SEDGWICK CLAIMS MANAGEMENT SERVICES INCORPORATED,
Plan Administrator of the Hewlett-Packard Company Disability Plan,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-0017

Before JOLLY, JONES, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Charlene Curley ("Curley") filed suit against Sedgwick Claims Management Services, Inc. ("Sedgwick") alleging that she was wrongfully denied long-term disability ("LTD") benefits under a disability plan governed by ERISA. The district court granted summary judgment in favor of Sedgwick. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20085

# I.

Curley worked for Hewlett-Packard ("HP") and its predecessor companies for seventeen years as a business planning manager and a project manager. Through her employment, Curley was eligible for benefits under HP's disability plan ("Plan") governed by ERISA, 29 U.S.C. § 1001 *et seq.* As the Plan's administrator, Sedgwick has discretionary authority to make eligibility determinations but does not insure or fund benefit payments.

Curley asserts that she became disabled in September 2004 due to carpal tunnel syndrome, cervicalgia, cervical radiculopathy, depression, left hand numbness, and chronic neck, shoulder, and back pain. After determining that Curley's injuries rendered her "totally disabled" from her job at HP, Sedgwick approved twenty-four months of LTD benefits.

In January 2006, Curley applied for disability benefits from the Social Security Administration ("SSA"). These benefits were approved when the SSA determined that Curley was disabled in July 2008. Despite finding that Curley was disabled, the SSA noted that "[m]edical improvement is expected with appropriate treatment" and recommended "a continuing disability review."

The Plan imposes a stricter eligibility standard for LTD benefits following the initial twenty-four month period. Thus, starting in September 2006, Curley had to prove she was "totally disabled" from *any* occupation, not just her job at HP. In May 2008, Sedgwick initiated a review of Curley's medical history and required her to undergo a medical exam by an independent physician, Dr. Anthony Mellilo, to determine whether she was still "totally disabled" under the Plan. Dr. Mellilo reported that Curley could ambulate without any aids or support, had "full" or "excellent" range of motion in her neck, shoulders, wrists, thumbs, and fingers, and "5/5" muscle strength. On a scale of 1–10, with 1 being not severe and 10 being most severe, Dr. Mellilo rated Curley's condition as a 2. He noted that Curley's "physical examination is essentially normal" and that her

No. 12-20085

"main complaints are of pain which cannot be fully elicited through a routine physical examination/evaluation." Following Dr. Mellilo's evaluation, Sedgwick concluded that Curley was not "totally disabled from any occupation" and accordingly terminated her LTD benefits.

In January 2009, Curley appealed the denial of her LTD benefits. As part of the appeals process, Sedgwick reviewed Curley's original claim for benefits and medical records from seven of her treating physicians. Sedgwick also shared Curley's medical file with Dr. Robert Pick, an orthopedic surgeon, and Dr. Jamie Lee Lewis, a specialist in physical medicine and rehabilitation. Both Dr. Pick and Dr. Lewis concluded that there were no objective clinical findings in Curley's medical reports that indicated she was unable to work. In March 2009, Sedgwick informed Curley that based on a review of all her medical information, it was affirming its decision.

Curley brought this suit, alleging that Sedgwick had wrongfully denied her LTD benefits. Both parties moved for summary judgment. The district court granted summary judgment in favor of Sedgwick, concluding that Sedgwick's decision was not an abuse of discretion because it was reasonably supported by medical evidence in the administrative record. Curley timely appealed.

## II.

A district court's grant of summary judgment is reviewed *de novo*. *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009). The district court reviewed Sedgwick's denial of benefits for abuse of discretion. However, Curley argues that the district court's standard of review was erroneous because it did not consider that Sedgwick had a conflict of interest. Whether the district court applied the correct standard of review is a question of law that is reviewed *de novo*. *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007).

When an ERISA benefits plan provides the administrator with

discretionary authority to construe the terms of the plan, the plan administrator's denial of benefits is reviewed for abuse of discretion. *Gosselink v. American Tel. & Tel. Inc.*, 272 F.3d 722, 726 (5th Cir. 2001). A conflict of interest exists when a plan administrator "both evaluates claims for benefits and pays benefits claims." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 128 S. Ct. 2343, 2348 (2008). Evidence of a conflict of interest does not alter the abuse of discretion standard, but rather is "weighed as a factor in determining whether there is an abuse of discretion." *Id.* at 115, 128 S. Ct. at 2350 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 957 (1989)).

Here, the Plan grants discretionary authority to Sedgwick to determine eligibility for benefits and construe the terms of the Plan. Curley concedes that Sedgwick evaluates but does not pay benefits claims. Thus, because Sedgwick did not have a financial conflict of interest, the district court correctly applied an ordinary abuse of discretion standard of review. *See Cooper*, 592 F.3d at 652 n.2 (noting that *Glenn* does not affect the standard of review when a company does not both evaluate and pay benefits claims).

### III.

A plan administrator does not abuse its discretion if its decision is supported by substantial evidence and is not arbitrary or capricious. *Cooper*, 592 F.3d at 652. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2005) (inset quotation marks omitted). A decision is arbitrary if there is no rational connection between the known facts and the decision or between the found facts and the evidence. *Cooper*, 592 F.3d at 652.

First, Curley argues that Sedgwick's decision denying her LTD benefits was arbitrary and capricious. Relying on *Glenn*, Curley contends that

No. 12-20085

Sedgewick's failure to address the SSA's finding that she is disabled suggests procedural unreasonableness. However, in *Glenn*, the Supreme Court did not find an abuse of discretion solely because the administrator failed to discuss the SSA's disability finding. Rather, the Court's decision was based on a combination of "serious concerns" arising from the plan administrator's financial conflict of interest, which are absent here. *See Glenn*, 554 U.S. at 118, 126 S. Ct. at 2352. As has been explained, Sedgwick does not fund the Plan and was not in a position to benefit financially from both finding Curley disabled under the SSA and not disabled under the Plan.[1] Further, the SSA determination rests on a different legal standard and covered a different time period and different medical evidence than Sedgwick's ultimate decision. For all these reasons, Sedgwick did not abuse its discretion by failing to discuss the SSA's finding in its decision.

Curley also asserts that Sedgwick "arbitrarily refused to consider" evidence from her physicians. This argument is meritless because (1) Sedgwick provided its consulting doctors the medical records from seven of Curley's treating doctors; (2) the consulting doctors attempted multiple phone calls to Curley's doctors; and (3) the consulting doctors referenced findings from Curley's primary physician in their reports.[2]

Finally, Curley argues that there is insufficient evidence to support Sedgwick's determination that she is not "totally disabled" under the Plan. We agree, however, with the district court's conclusion that the following evidence

---

[1] *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465 (5th Cir. 2010), is similarly distinguishable because it involved a plan administrator with a financial incentive to deny benefits under the plan.

[2] Sedgwick was also not required to accord special weight to the opinions of Curley's doctors. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 1972 (2003); *cf. Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 602–03 (5th Cir. 1994) (accepting an administrator's reliance on diagnoses of independent physicians, where those diagnoses conflicted with the diagnoses of the claimant's physicians).

No. 12-20085

in the administrative record sufficiently supports Sedgwick's decision: (1) medical records from Curley's treating physician indicating that her condition had improved; (2) Dr. Mellilo's determination that Curley's "physical examination is essentially normal;" (3) Dr. Pick's conclusion that Curley's medical history showed "a paucity of objective orthopedic findings to validate an inability to engage in full time work in a sedentary to light category;" and (4) Dr. Lewis's finding that Curley had no musculoskeletal abnormalities.[3]

Accordingly, the judgment of the district court is AFFIRMED.

---

[3] Curley's argument that Sedgwick refused to consider her subjective complaints of pain is refuted by the Plan's requirement that only "objective medical evidence," defined as "evidence establishing facts or conditions as perceived without distortion by personal feelings, prejudices or interpretations," can be used to determine disability status.